UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                   :

JOGLO REALTIES, INC., and ROBERT TOUSSIE,     :        16-CV-1666 (ARR)(CLP)
                                   :

              Plaintiffs,                   :        <u>NOT FOR ELECTRONIC</u>
                                   :        <u>OR PRINT PUBLICATION</u>
       -against-                       :
                                   :        <u>OPINION AND ORDER</u>
BASIL SEGGOS, ACTING COMMISSIONER OF THE     :
NEW YORK STATE DEPARTMENT OF               :
ENVIRONMENTAL CONSERVATION in his official    :
capacity; and UDO DRESCHER in his individual capacity, :
                                   :

              Defendants.                :
------------------------------------------------------------------ X

ROSS, United States District Judge:

        Plaintiffs, Robert Toussie and Joglo Realties, Inc.,[1] bring this action against the

acting commissioner of the New York State Department of Environmental Conservation

("DEC") in his official capacity, and Udo Drescher, an attorney employed by the DEC, in

his individual capacity. This case concerns a pending administrative action initiated by

the DEC, with Drescher as its lead attorney, alleging that plaintiffs committed various

environmental violations while repairing damage to their beachfront property following

Hurricane Sandy. Plaintiffs allege that, through this administrative proceeding and other

coercive conduct, Drescher has abused his power as an agent of the DEC to harass

plaintiffs in an attempt to force them to surrender their private property to the public.

Plaintiffs raise four claims pursuant to 42 U.S.C. § 1983 and seek a preliminary

injunction to prevent the administrative proceeding from going forward. Defendants have

---

[1] For reasons irrelevant to this case, it is unclear whether Mr. Toussie individually, or Joglo Realties, Inc., a
company founded and wholly owned by Mr. Toussie, is the owner of the real property that is the subject of
this suit. <u>See</u> Pls.' Am. Compl. ("Am. Compl."), Dkt. #19, ¶ 9 n.1. For ease of explanation, I will refer to
"plaintiffs" collectively as the owners of the property.

moved to dismiss plaintiffs' amended complaint, and urge the court to deny their motion for a preliminary injunction. For the reasons set forth below, defendants' motion to dismiss is granted and plaintiffs' motion for a preliminary injunction is denied.

### BACKGROUND[2]

In 1977, plaintiffs purchased "the Esplanade," a 40 foot by 1,062 foot strip of oceanfront property located on top of the seawall protecting the southern end of Manhattan Beach, Brooklyn. Am. Compl. ¶ 9. The Esplanade is located a few feet south of six homes owned by plaintiff Toussie's family, and plaintiffs have spent millions of dollars maintaining and improving it over their forty years of ownership. Id.

On October 29, 2012, Hurricane Sandy ravaged Manhattan Beach, causing extensive damage to the seawall, the Esplanade, and Toussie's homes. Id. ¶ 10. Following the hurricane, plaintiffs sought emergency assistance from the DEC, the Army Corps of Engineers, and other New York City Agencies. Id. ¶ 13. Plaintiffs received "general permits" from the DEC, which authorized repairs to and reconstruction of their property damaged by the hurricane. Id. ¶ 15. During the next two years, plaintiffs performed numerous repairs to the seawall and the Esplanade. Id. ¶ 16. Plaintiffs contend that the newly repaired seawall is "the highest quality and most protective post-Sandy seawall in the area," id., and that, throughout the course of the reconstruction, the Army Corps of Engineers complimented their work as "sound, restorative, and very protective," id. ¶ 14.

Plaintiffs allege that, beginning in August 2013, defendant Drescher "embarked on a plan to take advantage of the work necessitated by Hurricane Sandy in order to

---

[2] Except where otherwise noted, all facts are drawn from plaintiffs' amended complaint and are presumed to be true for the purposes of the pending motion.

extort Plaintiffs into relinquishing their ownership rights in the Esplanade." Id. ¶ 17. Plaintiffs believe that this scheme to coerce them into relinquishing their property has manifested in three ways.

First, plaintiffs allege they were baselessly threatened with criminal prosecution as a result of their repairs. On August 11, 2013, Drescher left a voicemail for plaintiff Toussie's lawyer threatening Toussie with criminal arrest as a result of purportedly unlawful construction work occurring at the Esplanade. Id. ¶ 21. Despite this threat, Toussie was not arrested or otherwise criminally sanctioned for any work performed on his property. Id.

Second, plaintiffs contend that Drescher collaborated with plaintiffs' neighbors to undermine plaintiffs' property rights. Id. ¶ 22. This allegation is based on statements made in filings in two lawsuits between Toussie and his neighbors. In these lawsuits, both of plaintiffs' neighbors stated that they had been "advised by the New York State Department of Environmental Conservation that Plaintiffs do not own the land or under water lands located seaward of the [Esplanade] at the end of Ocean Avenue," land that plaintiffs assert is unquestionably their private property. Id. ¶ 23. Another member of the DEC, George Stadnik, acknowledged to plaintiffs' counsel that the DEC provided this information in response to complaints from the Toussies' neighbors who wished to use the Esplanade. Id.

Third, and most importantly, Drescher signed an administrative complaint against plaintiffs, and, plaintiffs allege, has used the pending proceeding as leverage in his efforts to force plaintiffs to allow public access to the Esplanade. Id. ¶¶ 17, 24.

3

The administrative complaint, DEC File No. R2-20130724-348, was filed on July 8, 2014, and asserts twenty-six causes of action resulting from plaintiffs' repairs from early 2013 to the present. See id. ¶¶ 24-25; DEC Administrative Compl. ("DEC Compl.") Ex. A to Decl. of Jessica Albin in Supp. of Defs.' Mot. to Dismiss, Dkt. #34-1 ¶¶ 55-164.[3] Although the administrative complaint at one point refers to plaintiffs' deed to the Esplanade as their "purported deed," DEC Compl. ¶ 15, the complaint does not contest plaintiffs' private ownership of the property or allege that the property should be made available for public access. See generally DEC Compl. ¶¶ 55-164 (alleging numerous

---

[3] While ordinarily a court may consider only facts pled in a complaint or documents attached to the complaint, "[i]t is proper to take judicial notice of pleadings from other lawsuits attached to a defendant's motion to dismiss." HSA Residential Mortg. Servs. of Tex. v. Casuccio, 350 F. Supp. 2d 352, 361 (E.D.N.Y. 2003). Moreover, courts in this district have "routinely" taken judicial notice of state administrative records. Sahni v. Staff Attorneys Ass'n, No. 14-CV-9873, 2016 WL 1241524, at *5 (S.D.N.Y. Mar. 23, 2016), recons. in part on other grounds, No. 14-CV-9873, 2016 WL 3766214 (S.D.N.Y. May 13, 2016) (taking judicial notice of NLRB administrative record); see also Evans v. N.Y. Botanical Garden, No. 02-CV-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) ("A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.") Lastly, courts may also consider documents outside the pleadings when plaintiff "reli[ed] on the terms and effect of a document in drafting the complaint" and they are "integral to the [] complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Plaintiffs' claims are largely based on the administrative proceeding the DEC has initiated against them, and make numerous explicit references to the administrative complaint and the violations it alleges. See Am. Compl. ¶¶ 24-25, 27, 31. Thus, consideration of the administrative complaint is appropriate for any of these stated reasons.

Plaintiffs do not dispute my taking judicial notice of the administrative pleadings, but argue that defendants are inappropriately asking the court to consider the pleadings for the truth of the matters asserted within them. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) (allowing judicial notice of public record to determine "what statements it contained" but "not for the truth of the matters asserted" in those documents). I will consider the administrative complaint only to establish what statements are contained within it—i.e., to ascertain what charges have been brought against plaintiffs. I express no opinion as to whether plaintiffs in fact committed the underlying violations. See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1389 (2d Cir. 1992) (distinguishing case where court took judicial notice of a public record to "ascertain the legal nature of the claim stated in that complaint" from case where court inappropriately took judicial notice of a public record to "support [a] factual determination in the subsequent litigation").

violations but making no allegation that plaintiffs do not actually own the Esplanade or cannot exclude the public from their property). As a result of the administrative complaint, however, plaintiffs have had to suspend their work on the Esplanade. Id. ¶ 41. Plaintiffs have been "repeatedly" burglarized and vandalized during this time, which they contend is a result of their inability to "properly secure the Esplanade" while the complaint against them is pending. Id.

Approximately one month after the administrative complaint was filed, plaintiffs' then-attorney met with Drescher and another representative of the DEC to discuss a potential settlement of the administrative action.[4] Am. Compl. ¶ 26. During this meeting, Drescher stated that there is an area of the Esplanade that plaintiffs do not own and that their deed to the land was fraudulently obtained. Id. ¶¶ 27-28.

When the parties began to discuss a potential settlement, Drescher made his first direct demand that plaintiffs relinquish their ownership rights to the Esplanade. Drescher stated that the lack of public access to the Esplanade was the "biggest issue" for the DEC and that having the Esplanade "restored for public access" under the control of the City Parks Department was "what the DEC is looking for" in order to reach a settlement with plaintiffs. Id. ¶¶ 28, 30. When plaintiffs' counsel responded that any ownership issue was

---

[4] Defendants suggest that Drescher's statements made during settlement discussions should not be considered because "the content of settlement discussions is generally treated as confidential and is not disclosed to the court without all parties' consent." Defs.' Mem. in Supp. of Mot. to Dismiss Am. Compl. ("Defs.' Br."), Dkt. #33, at 29. Settlement negotiations may generally be confidential and are not admissible to show liability for the claim being settled, Fed. R. Evid. 408, but their disclosure must be allowed when the claim at issue arises from a "so-called (settlement) offer itself." Beechwood Restorative Care Ctr. v. Leeds, 856 F. Supp. 2d 580, 592 (W.D.N.Y. 2012); Norden v. Samper, 503 F. Supp. 2d 130, 158 (D.D.C. 2007) (rejecting "frivolous" argument that settlement offer that in itself violated the law was protected by Rule 408).

irrelevant to the environmental proceeding, that Drescher was interfering with plaintiffs' property rights, and that Drescher was asking for concessions from plaintiffs that he could not receive in the context of an administrative hearing, Drescher "expressed no disagreement." Id. ¶¶ 27, 31, 33. Lastly, Drescher informed plaintiffs that while they could build an east-west fence protecting their immediate backyard, the DEC would not allow them to build a fence anywhere "in the Esplanade." Id. ¶ 31. When plaintiffs' counsel inquired as to whether this meant plaintiffs could not prevent members of the public from using the entire length of the Esplanade, Drescher "shrugged." Id.

Following this meeting, the parties agreed to stay the administrative proceeding in order to engage in further settlement discussions. Id. ¶ 39. During these discussions, Drescher maintained his position that "the ownership issues" are a problem and the parties were not able to reach an agreement.[5] Id. ¶ 40. On May 4, 2016, the DEC refused to extend the stay as a result of this lawsuit, and the administrative proceeding became active for the first time since September 2014. Id. ¶ 39.

After the stay was dissolved, plaintiffs filed their answer to the administrative complaint on June 20, 2016. See Pls.' Answer to DEC Compl. ("Pls.' Answer"), Ex. B to Decl. of Jessica Albin in Supp. of Defs.' Mot. to Dismiss, Dkt. #34-2, at 27. The answer denied some of the conduct alleged in the complaint, but also admitted to much of the

---

[5] Plaintiffs hypothesize that Drescher's conduct is motivated by a belief that the Esplanade should be open to the public (an opinion he has shared directly with plaintiffs) and, more broadly, a belief that beachfront property should not be privately owned. Id. ¶ 18. Plaintiffs also believe that his actions are in furtherance of the beliefs of Stadnik, his friend and colleague at the DEC. During meetings to discuss the pending DEC complaint, Stadnik informed plaintiffs that he has fond memories of growing up near the Esplanade, and that he believes that the Esplanade should be easily accessible to the public as it was during his youth. Id.

conduct, instead maintaining that many of plaintiffs' repairs were either authorized under a DEC permit or were outside the DEC's jurisdiction.[6] See id. ¶¶ 55-206.

Lastly, plaintiffs allege that regardless of whether they have committed the environmental violations of which they are accused, they have been improperly singled out by the DEC. Id. ¶ 34. Plaintiffs state that their repair efforts following Hurricane Sandy are "more protective and more legally compliant" than that of many other private landowners in Manhattan Beach, and that other property owners rebuilt their seawalls without the appropriate permits. Id. ¶¶ 35, 38. Plaintiffs specifically compare themselves to fellow Manhattan Beach residents Kingsborough Community College ("Kingsborough") and the Menorah Center for Rehabilitation and Nursing Care ("Menorah Center"). Id. ¶¶ 36-37. Plaintiffs assert that Kingsborough's seawall is shorter than plaintiffs' wall, uses smaller stones, and uses a "vastly inferior" material, while the Menorah Center's seawall was built with construction debris and refuse, making it "less protective" than plaintiffs' wall. Id. Despite their inferior seawalls, neither Kingsborough, nor the Menorah Center, nor the private residences with which plaintiff alleges familiarity have been cited for environmental violations by the DEC. Id. ¶¶ 34-38.

Plaintiffs' amended complaint states four causes of action under Section 1983. Plaintiffs allege that their rights to substantive due process, procedural due process, and equal protection under the law (under two different constitutional theories) have been violated by Drescher and the DEC. Id. ¶¶ 42-67. Plaintiffs seek declaratory and

---

[6] As discussed above, the court will take judicial notice of the administrative record in the pending DEC proceeding. Sahni, 2016 WL 1241524, at *5. Again, I will consider plaintiffs' answer to the administrative complaint only to ascertain what statements plaintiffs made therein (for example, whether plaintiffs denied the charges or asserted affirmative defenses), not for the truth of the underlying matters (whether plaintiffs actually committed any of the underlying environmental violations).

injunctive relief against all parties and monetary relief against Drescher. Id. ¶¶ 47, 54, 61, 66. Additionally, plaintiffs filed a separate motion for a preliminary injunction asking the court to enjoin the administrative proceeding because the DEC is using the proceeding as leverage to coerce plaintiffs into relinquishing their property rights. See Mem. in Supp. of Pls.' Mot. for Prelim. Inj. ("Pls.' Mot. for Inj."), Dkt. #21.

## STANDARD OF REVIEW

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the pleading stage, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555-56. However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## DISCUSSION

### A. Substantive Due Process

Plaintiffs first argue that Drescher's attempts to get them to allow public access to their land constitute a violation of their substantive due process rights under the Fifth and Fourteenth Amendments. Id. ¶¶ 42-48. To state a substantive due process claim under Section 1983 on the basis of government infringement of a property right, plaintiffs must plead (1) that they have a valid property interest and (2) that defendants infringed on that interest in an "arbitrary or irrational manner." Cine SK8, Inc. v. Town of Henrietta, 507

F.3d 778, 784 (2d Cir. 2007) (citation omitted). When a substantive due process claim is brought against an executive branch actor, the infringement in question must "shock the conscience" to meet the arbitrary and irrational standard. Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). "[Its] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Id.

Here, it is undisputed that plaintiffs have a valid property interest as both sides acknowledge that plaintiffs "own" the Esplanade. See Defs.' Br. at 25 ("[plaintiffs] still own [the Esplanade], and the public has no access to any part of it"); Zahra v. Town of Southold, 48 F.3d 674, 680 (2d Cir. 1995) (stating that valid constitutionally protectable property interest exists in property that is owned). Plaintiffs cannot satisfy the second part of the substantive due process inquiry, however, as they have not alleged facts that support a conclusion that there has been a conscience-shocking infringement on their property interests.

1. The Stop Work Order Imposed on Plaintiffs as a Result of the Administrative Proceeding

The only action Drescher or the DEC has taken that has restricted plaintiffs' ability to use their land is the suspension of plaintiffs' renovations as a result of the pending administrative proceeding. Plaintiffs do not allege that it is outside the DEC's authority to prohibit their repairs from continuing while the administrative proceeding is pending. Thus, in order to state a substantive due process claim on the basis of their inability to continue renovating the Esplanade, plaintiffs must allege facts that give rise to

the inference that the initiation of the proceeding was so meritless that it "shocks the conscience."

Plaintiffs cannot meet this standard. While plaintiffs question Drescher's and the DEC's motives in bringing the proceeding, they do not plead facts that present a plausible inference that the DEC's complaint alleging numerous environmental violations is meritless. Plaintiffs have alleged that their renovations are, in their opinion, extremely protective and environmentally friendly, but these opinions are not sufficient for the court to plausibly infer that the DEC's allegations are inaccurate—let alone a gross abuse of governmental authority.

Moreover, many of plaintiffs' defenses to the administrative complaint are based on highly technical determinations of environmental law. Plaintiffs do not allege that the DEC fabricated claims of illicit conduct solely for the purpose of bringing a proceeding against them. For example, if defendants alleged that plaintiffs had built fences illegally when, in fact, plaintiffs had not built any fences at all, a court could reasonably infer that defendants were abusing their authority in an outrageous manner.

The administrative answer, however, reveals that plaintiffs' defenses are based on subtler issues, such as the boundaries of the DEC's jurisdiction on the oceanfront and the type of work authorized under a DEC general work permit. See, e.g., Pls.' Answer ¶ 124 (acknowledging that plaintiffs constructed chain link fence but denying that it is within "tidal wetlands adjacent area"); id. ¶ 165 (stating that the area where much of the work in question occurred is "outside of any DEC jurisdictional area" and that any activities occurring within the DEC's jurisdiction were "in compliance" with a DEC permit). Plaintiffs have not alleged any facts that provide a basis to infer that the DEC's

determination of its own jurisdictional area or what is permitted under its own work permits is so outrageous that it could serve as the basis for a substantive due process violation.

### 2. Drescher's Conduct Outside of the Administrative Proceeding

While much of Drescher's other alleged conduct is troubling, plaintiffs retain full ownership rights over the Esplanade, and plaintiffs' allegations do not allow an inference that any infringement on plaintiffs' property rights has occurred. First, with respect to Drescher's alleged phone call threatening Toussie's arrest if he did not stop the construction work on the Esplanade, plaintiffs acknowledge that Toussie was not arrested or sanctioned in any way. Am. Compl. ¶ 21. Plaintiffs' allegation that Drescher and the DEC interfered in their litigation with their neighbors fares no better. Even if plaintiffs are correct that defendants' actions were motivated by a desire to undermine their property rights, plaintiffs have not alleged that their litigation with their neighbors had any adverse consequences on plaintiffs' ownership of the Esplanade.

Plaintiffs also argue that Drescher's conduct during settlement negotiations itself constitutes a substantive due process violation. Specifically, they maintain that even "taking all of the DEC's environmental allegations as true, Mr. Drescher's use of those allegations to extort Plaintiffs to relinquish their constitutional property rights is blatantly unconstitutional." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Pls.' Br."), Dkt. #39, at 35. Even assuming that plaintiffs are correct that Drescher's conduct in connection with settlement discussions itself is in some way unconstitutional, it cannot rise to the level of a substantive due process violation unless it caused an

infringement on plaintiffs' property rights—a claim plaintiffs have not made, and cannot make.

O'Connor v. Pierson, 426 F.3d 187 (2d Cir. 2005), is instructive on this point. In O'Connor, a teacher was placed on paid medical leave and was not permitted to return to work until he completed a psychiatric evaluation. Id. at 192. The Second Circuit concluded the teacher had a constitutionally protected property interest in his employment and that a reasonable jury could find that this interest was arbitrarily infringed by the school's demand that he complete a psychiatric evaluation. Id. at 204. Nevertheless, the court found that plaintiff could not state a substantive due process claim until his accumulated sick leave ran out. Absent that occurrence, the teacher had not been "deprived of a property right in any meaningful sense" despite the school's ongoing unconstitutional conduct. Id. at 200.

O'Connor makes clear that unconstitutional conduct absent any adverse consequence does not give rise to a substantive due process claim. Just as the plaintiff in O'Connor could not state a substantive due process claim until he ran out of paid sick days, so plaintiffs here cannot state a substantive due process claim until Drescher's allegedly unconstitutional demands have resulted in an actual infringement of plaintiffs' property rights.

Plaintiffs' arguments to the contrary are unpersuasive. All of the cases on which plaintiffs rely for the proposition that "governmental extortion/coercion of this type," Pls.' Br. at 31, is sufficient to state a substantive due process claim are materially distinguishable. In each case, the defendant state actor either conditioned the granting of a benefit to which plaintiff was otherwise entitled on plaintiff's relinquishing his or her

property rights or denied plaintiff a benefit to which he or she was otherwise entitled for

no rational reason. See Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 828 (1987)

(conditioning the granting of a permit needed to rebuild home on plaintiffs' granting the

town an easement across their beachfront property); Walz v. Town of Smithtown, 46 F.3d

162, 165 (2d Cir. 1995) (refusing to connect plaintiffs to the water supply unless they

deeded property to the town); Brady v. Town of Colchester, 863 F.2d 205, 215 (2d Cir.

1988) (denying building permit and forbidding plaintiff from using property

commercially despite its being zoned for commercial use); Ecotone Farm LLC v. Ward,

639 F. App'x 118, 122 (3d Cir. 2016) (baselessly interfering with plaintiff's legal

renovations due to personal animosity); 545 Halsey Lane Props., LLC v. Town of

Southampton, 39 F. Supp. 3d 326, 341 (E.D.N.Y. 2014), recons on other grounds No. 14-

CV-800, 2015 WL 1565487 (E.D.N.Y. Apr. 8, 2015), recons on other grounds No. 14-

CV-800, 2015 WL 2213320 (E.D.N.Y. May 8, 2015) (refusing building permits and

requiring plaintiffs to remove improvements they were legally entitled to make unless

they relinquished legal rights to certain equipment on their property); Soundview

Assocs.v. Town of Riverhead, 725 F. Supp. 2d 320, 334-35 (E.D.N.Y. 2010) (arbitrarily

revoking special permit to build health spa to which plaintiff had a vested right); Garlasco

v. Stuart, 602 F. Supp. 2d 396, 405-06 (D. Conn. 2009) (ordering plaintiff off his

property and then blocking access to the property with immovable boulders, stones, dirt,

and snow in an attempt to compel plaintiff to sell his property); Sloup v. Loeffler, No. 05-

CV-1766, 2008 WL 3978208, at *10 (E.D.N.Y. Aug. 21, 2008) (harming plaintiff's

commercial fishing business by forcing plaintiff to remove legally placed fishing

equipment from the water for no reason other than personal animosity); T.S. Haulers, Inc.

v. Town of Riverhead, 190 F. Supp. 2d 455, 462 (E.D.N.Y. 2002) (denying special use permit that state law required town to issue); Collier v. Town of Harvard, No. 95-CV-11652, 1997 WL 33781338, at *3 (D. Mass. Mar. 28, 1997) (denying permits because plaintiff would not grant an easement that would benefit a member of the town planning board).

In contrast to the circumstances in all of those cases, Drescher's conduct during settlement negotiations is not tantamount to withholding a benefit to which plaintiff was otherwise entitled. Unlike the plaintiffs in the enumerated cases, the plaintiffs here are not losing an otherwise valid permit or license nor are they being denied access to their property because they have not acquiesced to Drescher's demands. Rather, the only deprivation that can be inferred from plaintiffs' allegations as a result of Drescher's conduct is that they have not been able to settle the administrative proceeding,[7] yet, plaintiffs have no entitlement to such a settlement. Drescher and the DEC could have refused to engage in settlement discussions in connection with the administrative proceeding and, had they done so, plaintiffs would be in no worse position than they are now. Thus, while Drescher's alleged insistence that plaintiffs relinquish their property rights in exchange for a settlement is unreasonable, this hollow demand cannot alone serve as the "infringement" necessary to state a substantive due process claim.

This is not to say, however, that the DEC's or Drescher's conduct could not rise to the level of a substantive due process violation in the future. For example, in their amended complaint plaintiffs allege that Drescher informed them, without any legal

---

[7]As stated above, I have no reason to question the validity of the DEC proceeding as plaintiffs have not pled facts that allow me to infer that they did not actually commit the numerous technical environmental violations with which they are charged.

explanation, that the DEC would not allow them to build a fence anywhere on the Esplanade other than to protect their immediate backyard. Am. Compl. ¶ 31. If, once the administrative proceeding has been adjudicated and the stop work order is lifted, the DEC were to prevent plaintiffs from building a legally compliant fence to exclude the public from their private property, this arbitrary restriction could give rise to a substantive due process claim. Nevertheless, as plaintiffs have not alleged any infringement on their property rights as a result of Drescher's conduct outside of the administrative proceeding, plaintiffs' substantive due process claim must be dismissed.[8]

### B. Procedural Due Process

Plaintiffs also claim that Drescher and the DEC have violated their rights to procedural due process. In order to state a procedural due process claim, plaintiffs must allege (1) a property right protected under the Constitution and (2) that they were deprived of that right without due process of law. Looney v. Black, 702 F.3d 701, 706-07 (2d Cir. 2012).

For all of the reasons stated above in the context of plaintiffs' substantive due process claim, plaintiffs have not alleged that they have were deprived of their property rights without due process of law. The only current interference with plaintiffs' rights is

---

[8] Moreover, even if Drescher's alleged conduct prior to the initiation of the administrative proceeding and during settlement negotiations supported an inference that he had infringed on plaintiffs' property rights, his threatening behavior alone would not rise to the "shocks the conscience" level necessary to state a substantive due process violation. See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 619-20, 624 (1st Cir. 2000) (holding that "continuing harassment" by police including multiple phone calls threatening physical violence and going to plaintiff's home and threateningly asking if his daughter was the "light of his life" did not constitute a substantive due process violation); Higazy v. Millennium Hotel & Resorts, 346 F. Supp. 2d 430, 451 (S.D.N.Y. 2004), aff'd in part, rev'd in part on other grounds, Higazy v. Templeton, 505 F.3d 161 (2d Cir. 2007) ("[Defendant's] alleged threats, whether intended to coax a confession or arbitrarily frighten, may be the subject of proper criticism, but they are not actionable under the Fifth Amendment's due process clause.").

result of the administrative proceeding, and plaintiffs will have numerous due process protections available to them at their hearing before an Administrative Law Judge. See N.Y. Comp. Codes R. & Regs. tit. 6, § 622 (detailing procedures for administrative hearing).

Because none of Drescher's conduct outside of the administrative proceeding caused any deprivation of plaintiffs' property rights, it cannot support a claimed violation of plaintiffs' procedural due process rights. Similarly to the authorities cited in support of their substantive due process claim, all of the cases plaintiffs rely on in support of their procedural due process claim are easily distinguishable, as the plaintiffs in those cases had alleged an actual deprivation of property or something else to which they would have otherwise been entitled. See Fasciana v. Cty. of Suffolk, 996 F. Supp. 2d 174, 178 (E.D.N.Y. 2014) (county seized plaintiff's vehicle); Lexjac, LLC v. Inc. Vill. of Muttontown, No. 07-CV-4614, 2011 WL 1059122, at *2 (E.D.N.Y. Mar. 18, 2011) (town seized plaintiff's property); Soundview Assocs, 725 F. Supp. 2d at 334-35 (town arbitrarily revoked special permit to build health spa to which plaintiff had a vested right); Garlasco, 602 F. Supp. at 405 (state actor blocked access to plaintiff's property with immovable boulders, stones, dirt, and snow).

Accordingly, plaintiffs' procedural due process claim must be dismissed.

### C. Equal Protection—Selective Enforcement

Plaintiffs state claims under the Equal Protection Clause of the Fourteenth Amendment under two distinct theories—a selective enforcement theory and a "class of one" theory. As to each of these theories, plaintiffs argue that they have stated two different equal protection claims. First, they argue that by initiating the administrative

16

proceeding in question, the DEC and Drescher "targeted [plaintiffs] for enforcement [of DEC environmental regulations] despite building a seawall that is higher quality and more legally complaint than those built by similarly situated property owners." Pls.' Br. at 40. Second, plaintiffs contend that Drescher's conduct outside of the administrative proceeding has caused them to be "extorted in an effort to coerce them into relinquishing their exclusive proper rights." Id. at 39.

### 1. Pleading Standard

To state a claim under a "class of one" theory, plaintiffs must plead facts that support a plausible inference that they "ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Similarly, to state a selective enforcement claim, plaintiffs must plead facts that allow the court to infer that "(1) compared with others similarly situated, [they were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980). The first step in evaluating whether plaintiffs have stated a claim under either theory is ascertaining whether they have identified others "similarly situated" who were treated differently.

With respect to "class of one" claims, the pleading standard for the "similarly situated" requirement is well-defined. The Second Circuit has held that a plaintiff pleading a "class of one" claim must allege a specific comparator that is so similar that "no rational person could regard the circumstances of the plaintiff to differ from those of

a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy;" and "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)). In other words, plaintiffs and their comparators must be "prima facie identical." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008).

There is disagreement among the district courts in this circuit as to whether this stringent standard articulated by the circuit for "class of one" claims also applies to selective enforcement claims. See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (collecting cases illustrating the disagreement among the courts). The courts applying a slightly more relaxed standard have asked whether plaintiffs and their comparators are "similarly situated in all material respects" Abel v. Morabito, No. 04-CV-7284, 2009 WL 321007, at *4 (S.D.N.Y. Feb. 10, 2009) (quoting Estate of Morris v. Dapolito, 297 F. Supp. 2d 680, 686 (S.D.N.Y. 2004)). As one court explained:

> The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely [n]or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

T.S. Haulers, Inc., 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002) (quoting The Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61 (1st Cir. 2004)).

I agree with those courts that have continued to apply the more relaxed standard to selective enforcement claims despite the Second Circuit's pronouncement of a stricter standard in "class of one" cases. The reason why such a strict standard is necessary for "class of one" claims is because a "class of one" claim is dependent on the lack of a "rational basis" for the difference in treatment in order to infer that plaintiff was being targeted by a state actor. In other words, a plaintiff is alleging that he is so virtually identical to someone else that there is no plausible explanation for the state actor's behavior besides discrimination. See Neilson, 409 F.3d at 105 (plaintiff must show that he "was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain.") Thus, if a plaintiff is not identical or nearly so to his chosen comparators, there is no basis for a fact finder to conclude that the difference in treatment was not based on an explainable governmental purpose.

This need for nearly identical comparators is not as compelling in the context of a selective enforcement claim. A plaintiff asserting a selective enforcement claim is not asking a fact finder to infer discrimination based solely on the lack of any other explanation; he is attempting to show discrimination on the basis of membership in a protected class, retaliation for the exercise of a constitutional right, or personal animus. Under these circumstances, where the plaintiff must offer evidence supporting his explanation for the difference in the treatment (as opposed to showing that there is no

explanation), it is not necessary that the comparator be "prima facie identical," so long as they are materially similar enough that class status, retaliation, or animus can be inferred as the basis for the differing treatment. See Mosdos Chofetz Chaim, Inc., 815 F. Supp. 2d at 697 (reasoning that a slightly lower standard is warranted for selective enforcement claims because "[a]n extremely high level of similarity is required in the 'class of one' context because plaintiffs asserting those claims are attempting to prove that the government's treatment was arbitrary and irrational"); Walker v. City of N.Y., No. 05-CV-1283, 2010 WL 5186779, at *7 n.21 (E.D.N.Y. Dec. 15, 2010) (finding that claim of selective treatment based on impermissible considerations did not require the same enhanced comparator requirement as "class of one" cases where plaintiffs are alleging that they are "being treated differently for no rational reason.").

2. The Initiation of the Administrative Proceeding

Nevertheless, even under the more flexible pleading standard, plaintiffs cannot allege that the administrative proceeding was the result of unconstitutional selective enforcement. While acknowledging that, "[a]s a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury," Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001), this rule is "not absolute," id., and courts have frequently dismissed claims where plaintiffs have not pled an adequate comparator.

While plaintiffs claim that the administrative proceeding is a result of the DEC's selective enforcement against them, plaintiffs have alleged nothing approaching a suitable comparator. Plaintiffs were served with a twenty-six count charge alleging numerous violations including raising the elevation of the surface at the Esplanade above

20

its pre-Hurricane Sandy height (DEC Compl. ¶¶ 84-90), using undersized stones and concrete rubble debris as building material (id. ¶¶ 112-23), and constructing a concrete wall, chain link fence, retainer wall, metal gate, and cast-iron fence in the DEC regulated "tidal wetlands adjacent area" (id. ¶¶ 75-83, 96-103, 124-39, 155-64). Moreover, the administrative complaint alleges that virtually all of this work was either performed without a permit or was beyond the scope of a permit that the DEC issued. See id. ¶¶ 56, 60, 64, 68, 72, 76, 81, 85, 92, 97, 101, 105, 113, 117, 121, 125, 129, 133, 137, 141, 146, 157.

Despite the numerous violations that are brought against them, the only specific comparisons plaintiffs make to others similarly situated are that Kingsborough's wall is shorter than plaintiffs' wall, uses significantly smaller stones and is interspersed with concrete, Am. Compl. ¶ 36, and that the Menorah Center's wall was made using construction debris and refuse, id. ¶ 37. Plaintiffs also allege in conclusory fashion that there are "several" private landowners who have broken concrete in the core and armoring of their walls, and "some of which" also include no stone armoring or concrete slabs dumped in piles. Id. ¶ 38. Plaintiffs claim that all of these defects make the other unnamed private seawalls "less protective" and a "threat to the properties as they exist today." Id. Lastly, plaintiffs allege that the DEC did not issue permits for any of the work completed on other Manhattan Beach seawalls. Id. ¶ 35. These comparators fail for numerous reasons.

First, notably absent from any of plaintiffs' allegations is any reference to state environmental laws. Even if plaintiffs and their comparators are facially similar (i.e., they are both landowners in Manhattan Beach who rebuilt seawalls after damage caused by

21

Hurricane Sandy), plaintiffs cannot plead a selective enforcement claim if they do not plead essential facts relevant to the laws they claim are being selectively enforced against them.

While plaintiffs make numerous sweeping allegations that their seawall is "more protective," "more legally compliant," and a "superlative example of shoreline protection," id. ¶ 35, they do not plead any facts that indicate that they were in compliance with state environmental regulations and their comparators were not. For example, while plaintiffs allege that Kingsborough's wall is "shorter" than plaintiffs' and uses "significantly smaller stones," id. ¶ 36, they do not allege how high the wall is, how high seawalls in the area are permitted to be, what kind of stone is used, or what kind of stone is permissible or impermissible for building. These are examples of facts that would be necessary for the court to infer that Kingsborough is equally liable as plaintiffs under state environmental law.

Witt v. Village of Mamaroneck, No. 12-CV-8778, 2015 WL 1427206 (S.D.N.Y. Mar. 27, 2015), aff'd sub nom. Witt v. Village of Mamaroneck, N.Y., 639 F. App'x 44 (2d Cir. 2016), is helpful in demonstrating the inadequacy of plaintiffs' comparators. In Witt, plaintiffs' home was severely damaged by Hurricane Irene. Id. at *1. Plaintiffs were originally granted a building permit to rebuild the damaged property, but then had a stop work order issued against them because the repair work they planned constituted a "substantial improvement," which, under a village code, required them to reconstruct and elevate the foundation of their home. Id. This requirement lead to numerous problems for plaintiffs that included plaintiffs' running out of money for repairs, defaulting on their mortgage, and having foreclosure proceedings initiated against them. Id.

Plaintiffs filed suit alleging that the other eleven homes on their block were also severely damaged, but did not have the village code requirements imposed on them when they made "substantial improvement" renovations to their homes. Id. at *2. Applying the lower "similarly situated in all material respects" standard, the court dismissed the complaint. Id. at *6. The court found that despite plaintiffs' allegation that all houses on their block were "similar in size, design, and value," that all houses on their block had suffered the same degree of damage, and that numerous other houses had also made "substantial improvements" as defined by the village code, plaintiffs had not alleged that their comparator houses had the same "relative dollar amount of repairs," or that their comparators had invested in alterations designed to prevent future flood damage rather than just repairing existing damage. Id. Because these facts were relevant to determine whether the section of village code in question applied to their comparator neighbors, the court dismissed plaintiffs' complaint, finding that, under the village code, plaintiffs' comparators were not "similarly situated in all material respects." Id.

The Second Circuit affirmed the district court's dismissal of plaintiff's selective enforcement claim "for substantially the reasons stated by the district court." Witt, 639 F. App'x at 45.

Just as the court in Witt could not infer that the village code in question was applicable to plaintiffs' comparators without knowing the cost of their repairs, plaintiffs' pleading here has provided no basis to infer that Kingsborough is equally liable to have an environmental proceeding initiated against it simply because its wall is shorter than plaintiffs' and is made of smaller stones. Even if plaintiffs are right that these facts make their wall more "protective" than Kingsborough's, they do not support a conclusion that

plaintiffs' renovations are more compliant with the laws and regulations in question. Plaintiffs' allegations regarding the Menorah Center and other private seawalls suffer from the same defect—they simply allege that these walls are in some way inferior to theirs without providing any facts that give rise to an inference that they are in violation of the same legal provisions as those under which plaintiff is being administratively charged.

Second, these comparators fail because plaintiffs do not allege that they committed anything approximating the number of violations that plaintiffs are charged with committing in the DEC's administrative complaint. Even assuming that all of the conduct plaintiffs attribute to their comparators (the shorter wall, the smaller stones) are violations that the DEC has the authority to prosecute, they are nonetheless not comparable to the widespread violations that plaintiffs are charged with committing.

Here again, Witt is instructive. In rejecting the plaintiffs' comparators, the court in Witt found it relevant that the disputed chapter of the village code was only one of the reasons why a stop work order was issued to halt plaintiffs' rebuilding. Witt, 2015 WL 1427206, at *8. The court found plaintiffs' admissions that they failed to file an additional necessary permit and performed additional repairs that required a New York State variance—factors that were not alleged with respect to their neighbors—further undermined their assertion that their neighbors were viable comparators. Id.

Similarly, in Nemeth v. Village of Hancock, No. 3:10-CV-1161, 2011 WL 56063 (N.D.N.Y. Jan. 7, 2011), plaintiffs brought a selective enforcement claim alleging that village zoning provisions were enforced against them, but not other members of the community. Id. at *2. The court dismissed the claim because plaintiffs were charged with

24

violating different provisions of the zoning code than those that they claimed their neighbors had violated. Id. at *5-6 The court held that by pleading comparators who, while perhaps in violation of some provision of the zoning code, were not in violation of the same provisions as plaintiffs, plaintiffs had "compare[d] the proverbial apples with oranges" and could not state a selective enforcement claim. Id. at *6.

Plaintiffs here, like the plaintiffs in Witt and Nemeth, have been accused of violating largely different provisions than their comparators. Plaintiffs do not allege that their comparators raised the elevation of their land higher than pre-Hurricane Sandy levels, or built any structures in the "tidal wetlands adjacent area," let alone five separate structures. Thus, even if we assume that plaintiffs and their comparators did commit a few of the same violations (building with undersized stones, performing post-Sandy work without a permit), they are still not viable comparators, as plaintiffs have committed vastly more violations. It is not unreasonable to think that the DEC would initiate a proceeding against a property owner who had committed twenty-six violations, but not against another who had committed only a handful of the same violations.

Plaintiffs' reliance on Sloup v. Loeffler, No. 05-CV-1766, 2008 WL 3978208 (E.D.N.Y. Aug. 21, 2008) is misplaced. While plaintiffs are correct that Sloup stands for the proposition that "another regulated party act[ing] similarly but was not subject to enforcement, combined with evidence that [the] state actor had a particular interest in plaintiff," Pls.' Br. at 43, can be sufficient to support a selective enforcement claim, the plaintiff in Sloup alleged a far stronger comparator. In Sloup, plaintiff, a commercial fisherman, alleged that another fisherman, whom he identified, was "trapping" in the exact same area where plaintiff had been told to remove his traps with the warning that

"equipment would be seized and summons issued if fishing occurred" in that area again. Id. at *13. This claim of a comparator engaging in the identical conduct in the same location that plaintiff was barred from using is vastly more supportive of a selective enforcement claim than plaintiffs' current allegations.

Thus, even under the less strict "similarly situated in all material respects" standard, plaintiff has failed to allege an appropriate comparator to state a selective enforcement claim as a result of the DEC's administrative proceeding.

### 3. Drescher's Conduct Outside of the Administrative Proceeding

With respect to Drescher's behavior outside of the administrative proceeding, plaintiffs allege that they do not need a suitable comparator because Drescher's conduct is "selective enforcement per se." Pls.' Br. at 40. Plaintiffs argue that Drescher's behavior has been so obviously improper that it "could never be considered a legitimate exercise of governmental authority—regardless of any distinction between [plaintiffs] and any other." Id.

Plaintiffs rely on two Seventh Circuit cases in support of this argument. First, they point to Geinosky v. City of Chicago, 675 F.3d 743 (7th Cir. 2012). In Geinosky, plaintiff had received twenty-four illegitimate parking tickets from the same police unit in a fourteen-month period, all of which were dismissed after plaintiff went to court seven times to defend himself. Id. at 745. The court allowed plaintiff's claim to move forward despite his not having alleged a similarly situated comparator, finding that the facts so clearly demonstrated harassment by state actors that to require a comparator would elevate "form over substance." Id. at 748. The Seventh Circuit found that requiring a comparator under these facts would serve no purpose because, as the court reasoned,

"Are there people in Chicago who have not received more than a dozen bogus parking tickets from the same police unit in a short time? [Plaintiff] could find hundreds of those people on any page of the Chicago phone book." Id. at 746 (emphasis in original).

To support their "selective enforcement per se" argument, plaintiffs also rely on Swanson v. City of Chetek, 719 F.3d 780 (7th Cir. 2013). In Swanson, the Mayor of the defendant city did not like how his next-door neighbor, plaintiff, was remodeling his home and used his position of power to harass him. Id. at 781-82. Plaintiff alleged that defendant told building inspectors not to issue a remodeling permit, delayed the grant of a fence permit for his building, told builders that he was a drug dealer who would not pay for the work provided and, most importantly, caused the city to prosecute plaintiff for the construction of a fence in violation of a setback requirement, a charge a municipal court judge determined to be baseless. Id. As in Geinosky, the Seventh Circuit found that it would be "oddly formalistic" to demand a similarly situated comparator given the "readily-apparent hostility" underlying defendant's actions. Id. at 785.

Plaintiffs argue that, as in Geinosky and Swanson, it is so apparent that Drescher's conduct—threatening Mr. Toussie with arrest, interfering in plaintiffs' private litigation with their neighbors, and using the administrative proceeding as leverage in settlement negotiations—is motivated by animus that there is no practical purpose in requiring a similarly situated comparator. In other words, plaintiffs argue that because they could point to countless people who have not been threatened with arrest by a DEC attorney or have not had the DEC refuse to settle environmental violations with them unless they surrender their property rights, requiring a comparator would elevate form over substance. Even assuming that this "selective enforcement per se" theory is viable in

27

this circuit,[9] plaintiffs still cannot state a selective enforcement claim because they have not suffered any injury as a result of Drescher's conduct outside of the administrative proceeding.

Even under a "selective enforcement per se" theory, plaintiffs still must allege facts supporting the inference that their legal rights have been harmed by defendants' improper conduct. The Fourteenth Amendment requires "equal protection of the laws," U.S. Const. amend. XIV, § 1 (emphasis added), and the Second Circuit has held that the selective enforcement doctrine is intended to provide protection from "adverse governmental action" without a legitimate basis, Bizzarro v. Miranda, 394 F.3d 82, 87 (2d Cir. 2005). In addition, the Seventh Circuit, the leading court to recognize plaintiffs' theory, has also found that a plaintiff cannot prevail on an equal protection claim without an allegation of some sort of harm caused by the state actor in question. See Del Marcelle v. Brown Cty. Corp., 680 F.3d 887, 889 (7th Cir. 2012) (en banc) (plurality opinion) (adopting standard that would require plaintiff to show, among other things "discriminatory intent and effect") (emphasis added); id. at 913 (Wood, J., dissenting) (proposing alternative standard on behalf of the rest of the en banc panel requiring, among other things, that plaintiffs show they have been "injured by intentionally discriminatory treatment").

While Drescher's alleged behavior outside of the environmental proceeding may be sufficiently outrageous that a comparator is not necessary, it has not deprived plaintiffs of any of the legal rights that the Equal Protection Clause protects. As discussed above with respect to plaintiffs' substantive due process claim, the only harm plaintiffs have

---

[9] Plaintiffs do not cite, and the court has not located, any case in this circuit that adopts this theory.

suffered as a result of Drescher's conduct is that they have been unable to settle the administrative proceeding—something to which they are not entitled. This lack of adverse legal action is what distinguishes this case from Geinosky and Swanson.

In Geinosky, plaintiff had to go to court to defend himself seven times as a result of the numerous frivolous parking tickets he was given. In Swanson, plaintiff was both denied legal permits to which he would otherwise have been entitled and had to defend himself in frivolous litigation. This abusive use of legal process against plaintiffs deprived them of equal protection under the law. Drescher's conduct, while certainly distressing, has not had any actionable adverse effect on plaintiffs' legal rights.

Accordingly, plaintiffs' selective enforcement claim is dismissed.

### D. Equal Protection—"Class of One"

Plaintiffs' equal protection claim under a "class of one" theory fails for the same reasons their selective enforcement claim fails. First, they do not state a claim that the administrative proceeding is the result of "class of one" discrimination because they have not stated an adequate comparator. As stated above, the Second Circuit has held that "class of one" claims require a "prima facie identical" comparator. Neilson, 409 F.3d at 105. As plaintiffs cannot meet the lesser "similarly situated in all material respects" standard for a comparator, they also cannot meet this higher standard necessary to state a "class of one" claim. [10]

---

[10] While it is not necessary in order to find plaintiffs' comparators inadequate in this case, I also note that multiple courts have held that properties being utilized for different purposes are inadequate comparators in the "class of one" context because they are frequently subject to different land use regulations. See, e.g., Ruston, 610 F.3d at 60 (finding residential homes, a country club, a luxury spa, and a large commercial building inadequate comparators for plaintiffs' proposed 14-home development); Costello v. Town of Huntington, No. 14-CV-2061, 2015 WL 1396448, at *8 (E.D.N.Y. Mar. 25, 2015) (finding a "property [that] contains multiple structures, commercial spaces, dwellings, driveways, and uses" not similarly situated as a matter of law to a single family home). Absent further factual allegations illustrating that Kingsborough and the Menorah Center are subject to, and in violation of, the same environmental

Second, also as analyzed above, they cannot state a "class of one" claim as a result of Drescher's conduct outside of the administrative proceeding because they have suffered no legally cognizable injury as a result of his behavior.

Thus, plaintiffs' "class of one" claim is dismissed.[11]

### E. Leave to Amend

In both their amended complaint and their brief, plaintiffs request leave to amend their complaint if the court grants defendants' motion to dismiss. Am. Compl. at 21; Pls.' Br. at 55. I grant this request in part.

Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008).

I deny plaintiffs' request for leave to amend their substantive and procedural due process claims, as any amendment to these claims would be futile. In order to state a substantive due process claim on the basis of the initiation of the administrative proceeding, plaintiffs would have to allege facts supporting the inference that the proceeding is so meritless that it "shocks the conscience." Nothing in either of plaintiffs'

---

provisions as plaintiffs, these cases cast further doubt on their viability as adequate comparators in the "class of one" context.

[11] Because I find that plaintiffs have failed to state a claim under either equal protection theory, I do not address defendants' argument that Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), bars plaintiffs' claim under a "class of one" theory. Also, because plaintiffs have failed to state any viable constitutional claim, I do not address defendants' argument that Drescher is entitled to absolute immunity for all of his actions taken in his capacity as an agency prosecutor.

first two complaints suggests that they could plead facts supporting that necessary inference. In fact, plaintiffs' administrative answer establishes that they do not deny that they performed many of the renovations that the DEC charges were unlawful. Rather, they dispute the DEC's jurisdiction to regulate them in certain areas and the extent to which their repairs went beyond the scope of DEC permits. Such technical disputes cannot rise to the "conscience shocking" level necessary to state a substantive due process claim.

Further, plaintiffs do not and could not allege that they will be deprived of due process protections during the administrative proceeding. Accordingly, they cannot state a procedural due process claim on the basis of that proceeding and any amendment to plaintiffs' substantive or procedural due process claims on this basis would be futile.

With respect to any claims that Drescher's conduct outside of the administrative proceeding gives rise to a substantive or procedural due process violation, these claims require an allegation that defendants infringed on plaintiffs' property rights. Because it is undisputed that plaintiffs have full ownership rights over the Esplanade and that, as plaintiffs acknowledge, their property rights have not been curtailed as a result of Drescher's conduct, plaintiffs cannot plead any facts that would support the necessary showing that Drescher's behavior has infringed on their ownership of the Esplanade. Accordingly, as plaintiffs' own factual allegations preclude success on these claims, any amendment to their substantive or procedural due process claims on the basis of Drescher's behavior outside of the administrative proceeding would also be futile.

Plaintiffs' equal protection claims, however, may be amended. While plaintiffs have not alleged adequate similarly-situated comparators in order to state a selective

enforcement or "class of one" claim on the basis of the administrative proceeding, they also have not alleged any facts that preclude such a pleading. I therefore grant plaintiffs leave to re-plead these claims in conformity with the pleading standards set forth in this opinion.

### F. Motion for Preliminary Injunction

While dismissal of plaintiffs' complaint necessarily precludes their success on a motion for a preliminary injunction, even if plaintiffs could state a viable constitutional claim, their motion to enjoin the administrative proceeding would nonetheless fail. A plaintiff seeking a preliminary injunction must make four showings: 1) that he or she is likely to succeed on the merits of his claim, 2) that he or she is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in his or her favor, and 4) that an injunction is in the public interest. Winter v. Nat'l. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Irrespective of the merits of their claims, plaintiffs have not shown that they are likely to suffer any irreparable harm as a result of the administrative proceeding that would warrant a preliminary injunction.[12]

"To establish irreparable harm, the movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation marks and citation omitted). Plaintiffs contend that if an injunction is not granted, they will suffer irreparable harm in three ways.

---

[12] Because I find that plaintiffs cannot show that they would suffer any irreparable injury absent an injunction, I do not address defendants' argument that the court should abstain from intervening in the administrative proceeding pursuant to Younger v. Harris, 401 U.S. 37 (1971).

First, they urge that irreparable harm is presumed because they allege a deprivation of a constitutional right. See Pls.' Mot. for Inj., at 33. In the Second Circuit, however, this presumption of irreparable harm arising from a constitutional deprivation is not automatic. See Time Warner Cable of N.Y.C. v. Bloomberg L.P., 118 F.3d 917, 924 (2d Cir. 1997) ("[W]e think it often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights.") (internal citations and quotation marks omitted); Smith v. Fredrico, No. 12-CV-04408, 2013 WL 122954, at *6 (E.D.N.Y. Jan. 8, 2013) (finding that "mere assertion of a constitutional injury is insufficient to automatically trigger a finding of irreparable harm" and that plaintiffs must convincingly show that the constitutional violation in question will result in non-compensable damages).

Even if such a presumption applied, however, plaintiffs have not alleged that they have suffered any constitutional injuries as a result of the administrative proceeding they seek to enjoin. At the outset, plaintiffs do not even contend that they will suffer any constitutional injury because of the DEC administrative proceeding. They have affirmatively disavowed any challenge to the "environmental allegations that form the substance of the administrative action or the relief formally sought in that action." Pls.' Reply in Supp. of Mot. for Prelim. Inj., Dkt. #44, at 14. They have also explicitly acknowledged that because "Mr. Drescher's unconstitutional conduct is not occurring or being adjudicated in the administrative action, the outcome of that action cannot possibly . . . affect . . . plaintiffs' claims." Pls.' Br. at 19. Because plaintiffs contend that

the source of their claimed injury is Drescher's behavior during settlement discussions and not any defect in the administrative proceeding, plaintiffs cannot enjoin a proceeding that is admittedly not the cause of any injury to them. Any other result would absolve plaintiffs of responsibility for environmental violations for reasons unrelated to the merits or fairness of the proceeding.

Second, plaintiffs argue that they are suffering an irreparable injury because the DEC proceeding has prevented them from exercising their property rights—specifically, in that it has impeded their ability to complete their repairs and renovations to the Esplanade. The argument is meritless, however, as plaintiffs do not challenge either the substance of the proceeding or the DEC's authority to halt their renovations during the pendency of the proceeding.

Plaintiffs have no constitutionally protected right to renovate their property in a way that violates state law or DEC regulations. To the extent they contend that their renovations to the Esplanade have not violated any laws or regulations, that is what will be adjudicated at the administrative proceeding. To hold that plaintiffs will be irreparably injured because the DEC is temporarily preventing them from completing renovations the agency believes to be illegal would effectively strip the DEC of its enforcement power. Under plaintiffs' theory, any enforcement proceeding that suspended illegal land use would be subject to an injunction.

Third, plaintiffs argue that forcing them to participate in the DEC proceeding will itself create irreparable injury because "the DEC undoubtedly will use [the findings from the proceeding] to undermine Plaintiffs' claims in this action outside of the purview of this Court." Pls.' Mot. for Inj. at 35. More specifically, plaintiffs contend that they may

34

be compelled to testify in the DEC proceeding, and that any findings the agency makes "may be afforded preclusive effect" in this action. Id. at 35-36.

I reject this argument for two reasons. First, this claim of injury is entirely speculative. Plaintiffs do not know what the result of the proceeding will be and cannot assume that the administrative findings will be harmful to them, much less dispositive of any claim they may assert in this court. Second, the proceeding will adjudicate only whether or not plaintiffs committed the various environmental claims alleged in the complaint—not whether plaintiffs own the Esplanade, whether Drescher has behaved appropriately or injuriously toward them, or whether plaintiffs' neighbors have also committed numerous environmental violations similar to those with which plaintiffs have been charged. Thus, even if the findings from the proceeding were afforded some form of preclusive effect, it is impossible to imagine how any DEC finding could in any way compromise plaintiffs' ownership rights to the Esplanade or limit plaintiffs' ability to pursue their federal constitutional claims.

While plaintiffs may be concerned that the DEC will exceed the scope of the administrative complaint by adjudicating their ownership rights in the Esplanade at the administrative proceeding, any findings by the agency are reviewable in an Article 78 proceeding in New York state court. See N.Y. Envtl. Conserv. Law §§ 25-0404, 15-0515, § 34-0112 (providing Article 78 review for DEC determinations with respect to various regulations plaintiffs are accused of violating). Moreover, if the DEC were to make findings beyond the scope of the issues delineated in the administrative complaint, such findings would undoubtedly not be afforded preclusive effect by another tribunal.

Plaintiffs' reliance on Schoolcraft v. City of New York, 955 F. Supp. 2d 192 (S.D.N.Y. 2013) ("Schoolcraft II"), does not alter this analysis. In Schoolcraft II, a police officer brought a Section 1983 action against the police department alleging that he was involuntarily hospitalized because he refused to follow the department's illegal quota policy. See Schoolcraft v. City of New York, No. 10-CV-6005, 2011 WL 1758635, at *1 (S.D.N.Y. May 6, 2011). The court enjoined a departmental disciplinary hearing against plaintiff, finding that the departmental proceeding would be adjudicating many of the same facts involving plaintiffs' hospitalization that would be necessary to resolve plaintiff's Section 1983 claim. Schoolcraft II at 199-200. Because the court would have been required to give the department's findings of fact preclusive effect, the court reasoned that an injunction was needed to ensure that the facts essential to plaintiff's constitutional claims were not adjudicated "outside the bounds of the judicial process and on defendants' terms." Id. at 194, 199 (internal quotation marks omitted). Here, unlike Schoolcraft II, the DEC will be adjudicating only technical environmental violations— not facts that would be dispositive of plaintiffs' constitutional claims.

Thus, even if plaintiffs could plead viable constitutional claims, their motion for a preliminary injunction must be denied as they cannot show that they will suffer any actual, imminent, and irreparable injury as a result of their participation in the administrative proceeding.

## CONCLUSION

For all of the reasons set forth above, defendants' motion to dismiss is granted and plaintiffs' motion for a preliminary injunction is denied. Plaintiffs' substantive and procedural due process claims are dismissed with prejudice. Plaintiffs' equal protection

claims are dismissed without prejudice. If plaintiffs seek to amend their complaint to re-plead their equal protection claims, they must file an amended complaint by September 8, 2016.

SO ORDERED.

s/ Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: August 23, 2016
Brooklyn, New York