UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                                                :
JOGLO REALTIES, INC., and ROBERT TOUSSIE,                       :      16-CV-1666 (ARR) (CLP)
                                                                :
                              Plaintiffs,                        :      OPINION AND ORDER
                                                                :
        -against-                                               :
                                                                :
BASIL SEGGOS, ACTING COMMISSIONER OF THE                        :
NEW YORK STATE DEPARTMENT OF                                    :
ENVIRONMENTAL CONSERVATION, in his official                     :
capacity, and UDO DRESCHER in his individual capacity,          :
                                                                :
                              Defendants.                        :
--------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiffs, Robert Toussie and Joglo Realties, Inc.,[1] have brought this action against Basil

Seggos, the acting commissioner of the New York State Department of Environmental

Conservation ("DEC"), in his official capacity, and against Udo Drescher, an attorney employed

by the DEC, in his individual capacity. The court previously dismissed plaintiffs' First Amended

Complaint, which raised four claims under 42 U.S.C. § 1983 concerning a pending DEC

administrative action, led by Drescher, alleging that plaintiffs committed various environmental

violations while repairing damage to their beachfront property following Hurricane Sandy. *See*

*Joglo Realties, Inc. v. Seggos*, 16-CV-1666, 2016 WL 4491409, at *1 (E.D.N.Y. Aug. 24, 2016),

Dkt. #45. The court dismissed plaintiffs' substantive and procedural due process claims with

prejudice, but granted plaintiffs leave to amend their equal protection claims. *Id.* at *18.

---

[1]     For reasons irrelevant to this opinion, it is unclear whether Mr. Toussie individually, or Joglo
Realties, Inc., a company founded and wholly owned by Mr. Toussie, is the owner of the real property at
issue in this suit. *See* Pls.' Second Am. Compl. ("SAC") ¶ 9 n.1, Dkt. #47. For ease of explanation, I will
refer to "plaintiffs" collectively as the owners of the property.

1

Plaintiffs then filed a Second Amended Complaint ("SAC"), Dkt. #47, which defendants moved to dismiss. For the reasons set forth below, defendants' motion to dismiss is granted.

## BACKGROUND[2]

In 1977, plaintiffs purchased "the Esplanade," a 40-foot by 1,062-foot strip of oceanfront property located on top of the seawall protecting the southern end of Manhattan Beach, Brooklyn. SAC ¶ 9. The Esplanade is located a few feet south of six homes owned by plaintiff Toussie's family, and plaintiffs have spent millions of dollars maintaining and improving it over their forty years of ownership. *Id.*

On October 29, 2012, Hurricane Sandy ravaged Manhattan Beach, causing extensive damage to the seawall, the Esplanade, and Toussie's homes. *Id.* ¶ 10. Following the hurricane, plaintiffs sought emergency assistance from the DEC, the Army Corps of Engineers, and multiple New York City agencies. *Id.* ¶ 13. Plaintiffs received "general permits" from the DEC, which authorized repairs to and reconstruction of their damaged property. *Id.* ¶ 15. During the next two years, plaintiffs performed numerous repairs to the seawall and the Esplanade. *Id.* ¶ 16. Plaintiffs contend that the newly repaired seawall is "the highest-quality and most protective post-Sandy seawall in the area," *id.*, and that throughout the course of the reconstruction, the Army Corps of Engineers complimented their work as "sound, restorative, and very protective," *id.* ¶ 14.

Plaintiffs allege that, beginning in August 2013, defendant Drescher "embarked on a plan to take advantage of the work necessitated by Hurricane Sandy in order to extort Plaintiffs into

---

[2] Though the background facts of this matter are also set forth in the court's August 24, 2016 opinion, I recount them here for ease of reference. Except where otherwise noted, all facts are drawn from plaintiffs' Second Amended Complaint and are presumed to be true for the purposes of this motion.

relinquishing their ownership rights in the Esplanade." *Id.* ¶ 17. Plaintiffs believe that this scheme to coerce them into relinquishing their property has manifested in three ways.

First, plaintiffs allege they were baselessly threatened with criminal prosecution as a result of their repairs. On August 1, 2013, Drescher left a voicemail for plaintiff Toussie's lawyer threatening Toussie with criminal arrest as a result of purportedly unlawful construction work occurring at the Esplanade. *Id.* ¶ 21. Despite this threat, Toussie was not arrested or otherwise criminally sanctioned for any work performed on his property. *Id.*

Second, plaintiffs contend that Drescher collaborated with plaintiffs' neighbors to undermine plaintiffs' property rights. *Id.* ¶ 22. This allegation is based on statements made in pleadings in two lawsuits filed by plaintiffs against their neighbors. In these lawsuits, both of plaintiffs' neighbors stated that they had been "advised by the New York State Department of Environmental Conservation that Plaintiffs do not own the land or under water lands located seaward of the [E]splanade at the end of Ocean Avenue," land that plaintiffs assert is unquestionably their private property. *See id.* ¶¶ 23–24. Another member of the DEC, George Stadnik, acknowledged to plaintiffs' counsel that the DEC provided this information in response to complaints from the Toussies' neighbors who wished to use the Esplanade. *Id.* ¶ 24.

Third, and most importantly, Drescher signed an administrative complaint against plaintiffs, and plaintiffs allege that he has used the pending proceeding as leverage in his efforts to force plaintiffs to allow public access to the Esplanade. *Id.* ¶¶ 17, 25.

The administrative complaint, DEC File No. R2-20130724-348, which was filed on July 8, 2014, asserted twenty-six causes of action resulting from plaintiffs' repairs from early 2013 to the present. *See id.* ¶¶ 25–26; DEC Compl., Decl. of Jessica Albin ("Albin Decl.") Ex. D, at

¶¶ 55–164, Dkt. #60-4 at 13–28.[3] Although the administrative complaint at one point refers to

plaintiffs' deed to the Esplanade as their "purported deed," DEC Compl. ¶ 15, the complaint does

not contest plaintiffs' private ownership of the property or allege that the property should be

made available for public access, *see generally id.* ¶¶ 55–164 (alleging numerous violations but

---

[3]     While ordinarily a court may consider only facts pled in a complaint or documents attached to the
complaint when deciding a motion to dismiss, "[i]t is proper to take judicial notice of pleadings from
other lawsuits attached to a defendant's motion to dismiss." *HSA Residential Mortg. Servs. of Tex. v.
Casuccio*, 350 F. Supp. 2d 352, 361 (E.D.N.Y. 2003). Moreover, "[c]ourts in this District [have]
routinely take[n] judicial notice of state administrative records." *Sahni v. Staff Attorneys Ass'n*, No. 14-
cv-9873, 2016 WL 1241524, at *5 (S.D.N.Y. Mar. 23, 2016) (taking judicial notice of NLRB
administrative record), *recons. in part on other grounds*, 2016 WL 3766214 (S.D.N.Y. May 13, 2016);
*see also Evans v. N.Y. Botanical Garden*, No. 02 Civ. 3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4,
2002) ("A court may take judicial notice of the records of state administrative procedures, as these are
public records, without converting a motion to dismiss to one for summary judgment."). Lastly, courts
may also consider a document outside the pleadings when plaintiff "reli[ed] on the terms and effect of
[the] document in drafting the complaint" and the document is "integral to the . . . [c]omplaint."
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Plaintiffs' claims
are largely based on the administrative proceeding the DEC has initiated against them, and plaintiffs make
numerous explicit references to the administrative complaint and the violations it alleges. *See* SAC ¶¶
25–26, 28, 32. Thus, consideration of the administrative complaint is appropriate for any of these stated
reasons.

     Plaintiffs argue that "none of the administrative materials submitted by Defendants are subject to
judicial notice." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss Second Am. Compl. ("Pls.' Opp'n") 30,
at 30, Dkt. #61 at 36. According to plaintiffs, the *Sahni* case states that a court may take judicial notice of
documents from a state administrative proceeding "only when (1) it is 'clear on their face that they are
part of the administrative record,' and (2) the documents are 'publicly available.'" *Id.* at 29, Dkt. #61 at
35 (quoting *Sahni*, 2016 WL 1241524, at *6). *Sahni* does not, however, enumerate any such factors or
otherwise limit the state administrative documents of which a court may take judicial notice. Rather, the
court in *Sahni* declined to take judicial notice of documents that were *neither* clearly part of the
administrative record *nor* shown to be publicly available. *Sahni*, 2016 WL 1241524, at *6. Here, the
documents proffered by defendants are clearly part of the record of the state administrative action pending
against plaintiffs. Thus, it is proper for the court to take notice of them.

     Plaintiffs also argue that defendants are inappropriately asking the court to consider the
administrative pleadings for the truth of the matters asserted within them. *See* Pls.' Opp'n at 31, Dkt. #61
at 36 (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (stating that courts may take
judicial notice of public documents to determine "what statements [they] contain[]" but "not for the truth
of the matters asserted in" those documents)). I will consider the administrative complaint only to
establish what statements are contained within it—specifically, to ascertain what charges have been
brought against plaintiffs. I express no opinion as to whether plaintiffs in fact committed the underlying
violations. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1389 (2d Cir. 1992)
(distinguishing case where court properly took judicial notice of a public record "to ascertain the legal
nature of the claim stated in that complaint" from case where court inappropriately took judicial notice of
a public record to "support [a] factual determination in the subsequent litigation").

4

not contending that plaintiffs do not actually own the Esplanade or cannot exclude the public from their property). As a result of the administrative complaint, plaintiffs have had to suspend their work on the Esplanade. SAC ¶ 69. Plaintiffs have been "repeatedly . . . burglarized and vandalized" during this time, which they contend is a result of their inability "to properly secure the Esplanade" while the complaint against them is pending. *Id.*

Approximately one month after the administrative complaint was filed, plaintiffs' then-attorney met with Drescher and another representative of the DEC to discuss a potential settlement of the administrative action. *Id.* ¶ 27. During this meeting, Drescher stated that there is an area of the Esplanade that plaintiffs do not own and implied that their deed to the land was obtained improperly. *Id.* ¶¶ 28–29.

When the parties began to discuss a potential settlement, Drescher made his first direct demand that plaintiffs relinquish their ownership rights to the Esplanade. *Id.* ¶ 31. Drescher "stated that the lack of public access to the Esplanade was the 'biggest issue'" for the DEC and that having the Esplanade "'restored for public access'" under the control of the City Parks Department "was 'what the DEC [was] looking for' in order to" reach a settlement with plaintiffs. *Id.* ¶¶ 29, 31. When plaintiffs' counsel responded that any ownership issue was irrelevant to the environmental proceeding, that Drescher was interfering with plaintiffs' property rights, and that Drescher was asking for concessions from plaintiffs that he could not receive in the context of an administrative hearing, Drescher did not disagree. *Id.* ¶¶ 28, 32, 34. Lastly, Drescher informed plaintiffs "that, while [they] could build an east-west fence protecting their immediate backyards . . . , the DEC would not allow them to build [a] fence in the Esplanade." *Id.* ¶ 32. When plaintiffs' counsel inquired as to whether this meant plaintiffs could

not prevent members of the public from using "the entire length of the Esplanade," Drescher

"shrugged." *Id.*

Following this meeting, the parties agreed to stay the administrative proceeding in order

to engage in further settlement discussions. *Id.* ¶ 67. During these discussions, Drescher

maintained his position "that 'the ownership issues' are a problem," and the parties were not able

to reach an agreement.[4] *Id.* ¶ 68. On May 4, 2016, the DEC refused to extend the stay as a result

of this lawsuit, and the administrative proceeding became active for the first time since

September 2014. *Id.* ¶ 67.

After the stay was dissolved, plaintiffs filed their answer to the administrative complaint

on June 20, 2016. *See* Pls.' Answer to DEC Compl. ("Pls.' Answer"), Albin Decl. Ex. E, at 26,

Dkt. #60-5 at 27. The answer denied some of the conduct alleged in the complaint, but also

admitted to much of the conduct, instead maintaining that many of plaintiffs' repairs were either

authorized under a DEC permit or were outside the DEC's jurisdiction.[5] *See id.* ¶¶ 55–206, Dkt.

#60-5 at 10–27. On July 13, 2016, the DEC filed an amended complaint, "eliminating

'duplicative' charges and reducing the number of causes of action to six, each of which alleges

that [p]laintiffs engaged in activities without permit authorization." SAC ¶ 37; DEC Am.

Compl., Albin Decl. Ex. G, at ¶¶ 77–113, Dkt. #60-7 at 18–25. Specifically, the DEC alleges

---

[4]     Plaintiffs hypothesize that Drescher's conduct is motivated by a belief that the Esplanade should be open to the public (an opinion he has shared directly with plaintiffs) and, more broadly, a belief that beachfront property should not be privately owned. *Id.* ¶ 18. Plaintiffs also believe that Drescher's actions further the beliefs of Stadnik, his friend and colleague at the DEC. *Id.* ¶ 19. During meetings to discuss the pending DEC complaint, Stadnik informed plaintiffs that he has fond memories of growing up near the Esplanade, and that he believes the Esplanade should be as easily accessible to the public as it was during his youth. *Id.*

[5]     As discussed above, the court will take judicial notice of the administrative record in the pending DEC proceeding. *Sahni*, 2016 WL 1241524, at *5. Again, I will consider plaintiffs' answer to the administrative complaint only to ascertain what statements plaintiffs made therein (for example, whether plaintiffs denied the charges or asserted affirmative defenses), not for the truth of the underlying matters (whether plaintiffs actually committed any of the underlying environmental violations).

that plaintiffs have committed the following violations: (1) unauthorized placement of fill in the Esplanade, (2) unauthorized placement of fill in the shoreline erosion structure; (3) unauthorized construction of a shoreline erosion structure; (4) unauthorized construction of a concrete wall and associated concrete footing; (5) unauthorized construction of a fence and cast-iron fence piece; and (6) violations of two general permits, which allowed limited repairs of existing structures, by building "a shoreline erosion structure at a higher elevation and located further seaward than the structure that existed prior to Hurricane Sandy," using "undersized stones, concrete rubble debris, and unauthorized fill." *Id.*

Lastly, plaintiffs allege that regardless of whether they have committed the environmental violations of which they are accused, they have been improperly singled out by the DEC. SAC ¶ 35. In their First Amended Complaint, plaintiffs alleged that their repair efforts following Hurricane Sandy were "more protective and more legally compliant" than that of many other private landowners in Manhattan Beach, and that other property owners rebuilt their seawalls without the appropriate permits. *See* Pls.' First Am. Compl. ("FAC") ¶¶ 35, 38, Dkt. #19. Plaintiffs specifically compared themselves to fellow Manhattan Beach residents Kingsborough Community College ("Kingsborough") and the Menorah Center for Rehabilitation and Nursing Care ("Menorah Center"). *Id.* ¶¶ 36–37. Plaintiffs asserted that Kingsborough's seawall is shorter than plaintiffs' wall, uses smaller stones, and uses a "vastly inferior" material, while the Menorah Center's seawall was built with construction debris and refuse, making it "less protective" than plaintiffs' wall. *Id.* Despite their inferior seawalls, neither Kingsborough, nor the Menorah Center, nor the private residences with which plaintiff alleges familiarity have been cited for environmental violations by the DEC. *Id.* ¶¶ 34–38.

Plaintiffs' First Amended Complaint stated four causes of action under § 1983. Plaintiffs alleged that Drescher and the DEC violated their rights to substantive due process, procedural due process, and equal protection under the law (under two different constitutional theories). *Id.* ¶¶ 42–67. In an opinion filed on August 24, 2016, the court dismissed these claims. *Joglo Realties*, 2016 WL 4491409, at *18. The court dismissed the substantive and procedural due process claims with prejudice, concluding that plaintiffs had failed to allege any infringement on their property rights outside of the administrative proceeding. *Id.* at *7–8, *18.[6]

The court dismissed plaintiffs' equal protection claims, asserted under selective enforcement and "class of one" theories, without prejudice. *Id.* at *18. The court reasoned that plaintiffs had failed to state an equal protection claim because they had not adequately alleged the existence of an adequate comparator that was materially similar to them. *Id.* at *12, *14. Further, the court stated that plaintiffs had failed to show that Drescher's alleged behavior outside of the administrative proceeding deprived them of any legal rights. *Id.* at *14. The court granted plaintiffs leave to amend these claims, allowing plaintiffs to re-plead the claims in conformity with the standards set forth in the opinion. *Id.* at *15.

Plaintiffs filed their Second Amended Complaint on September 8, 2016. SAC, Dkt. #47. Plaintiffs allege that defendants have treated nine neighboring landowners differently than plaintiffs, "despite the fact that many of these landowners committed most—and in some cases

---

[6]     Plaintiffs nevertheless seem to attempt to bring substantive and procedural due process claims in their Second Amended Complaint. SAC ¶¶ 81–92. Because these claims were dismissed without leave to re-plead—and because plaintiffs have made no attempt in their briefing to request reconsideration of the court's decision as to these claims—I will not consider the claims in this posture. *See Collier v. Boymelgreen Developers*, No. 06 CV 5425, 2008 WL 835706, at *5 (E.D.N.Y. Mar. 28, 2008) (declining to revisit claims that were previously dismissed with prejudice); *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.").

all—of the environmental violations of which [d]efendants accuse [p]laintiffs." SAC ¶ 36. Specifically, plaintiffs allege that three of the neighboring landowners conducted all six of the regulated activities on which the DEC's Complaint is based, without a permit, and that defendants did not bring a formal enforcement action against any of these landowners. *Id.* ¶¶ 35–36, 44. Plaintiffs further allege that the other six landowners engaged in "nearly every type of conduct that [p]laintiffs are accused of committing," and that defendants did not bring formal proceedings against those landowners. *Id.* at ¶ 44. Moreover, according to plaintiffs, all nine of these comparators "built seawalls that are inferior from environmental and engineering standpoints to [p]laintiffs' seawall." *Id.*

Defendants' motion to dismiss plaintiffs' Second Amended Complaint is now before this court. Notice of Mot. to Dismiss, Dkt. #58.

## STANDARD OF REVIEW

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "At the pleading stage," the court must "'accept[] all well-pleaded allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor.'" *Montesa v. Schwartz*, 836 F.3d 176, 194 (2d Cir. 2016) (alterations in original) (quoting *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 169 (2d Cir. 2012)). However, the court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiffs plead Equal Protection Clause claims under two theories: selective enforcement and "class of one." Specifically, plaintiffs argue that the DEC selectively targeted them with a formal enforcement action "based on animus or as retaliation for [p]laintiffs' exercise of their constitutional right to exclude others from their property." Pls.' Opp'n at 1, Dkt. #61 at 7. For the reasons explained below, plaintiffs' claims fail.

### A. Equal Protection—Selective Enforcement

#### 1. Legal Standard

To state a selective enforcement claim, plaintiffs must plead facts that allow the court to reasonably infer "that (1) . . . compared with others similarly situated, [they were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). "[T]he precise standard for determining whether comparators are similarly situated for" purposes of a selective enforcement claim is an unsettled question in this circuit. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (collecting cases illustrating the disagreement among district courts).

Some district courts have held that the standard in selective enforcement cases is the same as that in "class of one" cases, which, as explained in more detail below, require plaintiffs to "show an extremely high degree of similarity between themselves and [their comparators]," *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). *See, e.g.*, *Kamholtz v. Yates Cty.*, No. 08-CV-6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec. 3, 2008).

Other courts have applied a slightly more lenient standard, asking whether plaintiffs are similarly situated to comparators "in all material respects." *Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 696 (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008)). To satisfy this standard, "plaintiffs 'must identify comparators whom a prudent person would think were roughly equivalent, but plaintiffs need not show an exact correlation between themselves and the comparators.'" *Id.* (alterations omitted) (quoting *Abel v. Morabito*, No. 04 Civ. 07284, 2009 WL 321007, at *5 (S.D.N.Y. Feb. 10, 2009)). In other words, "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . . Exact correlation is neither likely nor necessary, but the cases must be fair congeners. . . . [A]pples should be compared to apples." *T.S. Haulers. Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 463 (E.D.N.Y. 2002) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)).

As I explained in the previous opinion dismissing plaintiffs' First Amended Complaint, I apply the more lenient standard to plaintiffs' selective enforcement claim. *See Joglo Realties, Inc.*, 2016 WL 4491409, at *9. In short, the need for nearly identical comparators is not as high in selective enforcement cases as it is in "class of one" cases because plaintiffs bringing selective enforcement claims must provide evidence supporting their theory for why they were treated differently than their comparators (namely, class status, retaliation, or animus), whereas plaintiffs bringing "class of one" claims ask the fact finder to infer discrimination based solely on the lack of any other rational explanation for the difference in treatment. *See id.*

2. Analysis

Even under the more lenient standard, plaintiffs have not plausibly alleged that they are similar to their comparators "in all material respects." *See Mosdos Chofetz Chaim, Inc.*, 815 F.

Supp. 2d at 696 (quoting *Vassallo*, 591 F. Supp. 2d at 184). It is true that, "[a]s a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001). Nevertheless, "[t]his rule is not absolute," *id.*, and dismissal is appropriate where it is not "plausible that a jury could ultimately determine that the comparators are similarly situated," *see Mosdos Chofetz Chaim, Inc.*, 815 F. Supp. 2d at 698.

### a. Summary of Plaintiffs' Allegations

Here, despite plaintiffs' attempt to provide more detailed factual allegations in their Second Amended Complaint, plaintiffs have failed to allege a suitable comparator. A summary of plaintiffs' amended allegations follows.

In paragraphs 44–62, plaintiffs state, in a largely conclusory fashion, that nine neighboring landowners engaged in all, or most, of the conduct underlying plaintiffs' alleged environmental violations, but have not been "targeted with an enforcement action." *See* SAC ¶¶ 44–62. Specifically, plaintiffs claim that Comparator 1, which is the property seaward of 296 West End Avenue, committed the following violations with which plaintiffs have been charged: (1) "placed fill in, on, and under his property without a permit"; (2) "placed fill—including more broken concrete and other concrete rubble debris, demolition debris, and undersized stones than [p]laintiffs allegedly used—in and on his seawall and below mean high water in a navigable water of the State without a DEC permit"; (3) "began the reconstruction of his seawall prior to receiving authorization from the DEC"; (4) "built an unpermitted concrete structure in a regulated area," specifically "a large, concrete retaining wall adjacent to the seawall which runs the length of the property"; (5) "built fencing in a regulated area without a permit," specifically "65 feet of fencing across the seawall to the water"; and (6) "rebuilt his seawall at a higher

elevation and farther seaward than approved by the DEC's Hurricane Sandy general permits, and used more undersized stones, concrete rubble debris, and unauthorized fill in its construction than [p]laintiffs allegedly used." *Id.* ¶ 45. Plaintiffs also specify the state regulations that this alleged conduct violated. *Id.*

The allegations for Comparators 2 and 3, the properties seaward of 295 Corbin Place and seaward of 290 Beaumont Street, respectively, are nearly identical to those for Comparator 1. *See id.* ¶¶ 47–50. The only distinct details plaintiffs provide for Comparator 2 are that the "landowner installed a new concrete wall running perpendicular to the seawall and north toward the residential structure," and that the landowner "built approximately 40 feet of fencing leading to the seawall." *See id.* ¶ 47. Likewise, with respect to Comparator 3, plaintiffs allege that the landowner "built multiple unpermitted concrete structures in a regulated area," including "a concrete parking structure, the seaward side of which is bounded by a concrete retaining wall and tall concrete gate pillar," and that the landowner "installed approximately 80 feet of fence between the two sides of the property to the seawall." *Id.* ¶ 49.

Plaintiffs further allege that Comparators 4–6, the properties seaward of 295 West End Avenue, seaward of 286 Corbin Place, and seaward of 290 Amherst Street, respectively, committed all but the fourth violation listed above (building an unpermitted concrete structure). *See id.* ¶¶ 51, 53, 55. The only specific details provided for these comparators are the lengths of their fences (45 feet, 210 feet, and 120 feet, respectively). *See id.*

Plaintiffs allege that Comparator 7, the property seaward of 295 Amherst Street, committed four of the violations with which plaintiffs have been charged: (1) placing fill in, on, and under his property without a permit; (2) placing fill—including more pieces of broken concrete and more undersized stones than plaintiffs allegedly used—in and on his seawall and

below mean high water; (3) beginning the reconstruction of his seawall prior to receiving authorization from the DEC; and (4) rebuilding his seawall at a higher elevation and farther seaward than approved by the DEC's Hurricane Sandy general permits, and using more undersized stones, concrete rubble debris, and unauthorized fill in its construction than plaintiffs allegedly used. *Id.* ¶ 57.

According to plaintiffs, Comparator 8, the Menorah Center, committed four of the violations with which plaintiffs have been charged: (1) placing fill in, on, and under its property without a permit; (2) placing fill—including more construction debris, concrete, and extremely undersized stones than plaintiffs allegedly used—in and on its seawall and below mean high water; (3) beginning the reconstruction of its seawall prior to receiving authorization from the DEC; and (4) building multiple unpermitted structures in a regulated area, including 2,000 square feet of concrete sidewalk and a large, concrete retaining wall. *Id.* ¶ 59.

Finally, plaintiffs allege that Comparator 9, Manhattan Beach Park, also committed four of the violations with which plaintiffs have been charged: (1) placing fill—including more construction debris and concrete than plaintiffs allegedly used—in and on the seawall and below mean high water; (2) beginning the reconstruction of its seawall prior to receiving authorization from the DEC; (3) building an unpermitted concrete structure in a regulated area, specifically a large concrete walkway; and (4) building fencing in a regulated area without a permit. *Id.* ¶ 61.

### b.  Plaintiffs' Allegations Are Insufficient to Survive a Motion to Dismiss

These conclusory allegations fail to provide the court with the "facts that would be necessary for the court to infer that [the comparators are] equally liable as plaintiffs under state environmental law." *Joglo Realties, Inc.*, 2016 WL 4491409, at *10. Although plaintiffs assert that Comparators 1–9 violated all, or most, of the laws and regulations under which plaintiffs

have been charged, in this context—an agency decision as to whether, and against which property owners, to bring an enforcement action—these allegations are insufficient to show that the comparators are similarly situated in all material respects.

"[I]t long has been recognized that government officials retain wide discretion about enforcement decisions." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 707 (S.D.N.Y. 2011) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)). The Supreme Court has acknowledged that "an agency decision not to enforce often involves a complicated balancing of a number of factors." *Heckler*, 470 U.S. at 831. As a result, "the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action . . . best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *Id.* Further, "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing." *Id.* The Second Circuit has likewise stated that "decisions regarding enforcement discretion . . . must reflect limited agency resources, enforcement priorities and other administrative constraints." *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1205 (2d Cir. 1992) (recognizing that the EPA may "selectively prosecut[e] only the major contributors to a hazardous response site").

Thus, in the context of the DEC's decision to bring a formal enforcement action against plaintiffs, and not Comparators 1–9, allegations that the comparators violated the same rules and regulations that plaintiffs are accused of violating are insufficient to show that plaintiffs and the comparators are similarly situated in all material respects. Plaintiffs were also required to plead

facts allowing the court to infer that the *manner* and *extent* of the violations is similar. Yet plaintiffs have failed to plead almost any facts in this regard.[7]

Notably missing from plaintiffs' allegations, for example, are facts regarding the relative lengths and heights of the seawalls that plaintiffs and their comparators have attempted to repair, purportedly in violation of state environmental regulations. Such facts are relevant to at least two of plaintiffs' alleged violations: (1) placing fill in and on their seawall without a permit; and (2) rebuilding their seawall at a higher elevation and farther seaward than approved by the DEC's Hurricane Sandy general permits. Plaintiffs argue that the length of a landowner's seawall is irrelevant to whether the landowner violated the governing statutes and regulations, *see* Pls.' Opp'n at 21–22, 26, Dkt. #61 at 27–28, 32, but, again, it is not only the *fact* of a violation that is relevant to the court's determination as to whether plaintiffs have pled adequate comparators. If plaintiffs' seawall is vastly larger than those of its comparators, then the DEC may have permissibly prioritized enforcement of the relevant environmental regulations against a relatively larger contributor to the environmental harms occurring on Manhattan Beach. *See B.F. Goodrich Co.*, 958 F.2d at 1205.

Indeed, plaintiffs admit in their brief that the seawalls of the seven private residences neighboring plaintiffs' property (Comparators 1–7) "*collectively* . . . are roughly equal in length" to plaintiffs' seawall. Pls.' Opp'n at 21, Dkt. #61 at 27 (emphasis added). According to

---

[7]    In its previous opinion dismissing plaintiffs' claims, the court did not focus on the need for plaintiffs to plead facts regarding the magnitude of the comparators' violations because plaintiffs' First Amended Complaint failed even to specify the state environmental laws under which the comparators were allegedly liable. *See Joglo Realties, Inc.*, 2016 WL 4491409, at *10 ("First, notably absent from any of plaintiffs' allegations is any reference to state environmental laws."). But the court did not state that it would be sufficient for plaintiffs to assert, without more, that the comparators violated the same laws that plaintiffs have been charged with violating. Indeed, as explained below, it is impossible for the court to reasonably infer that plaintiffs are similarly situated to their comparators in all material respects without additional factual allegations.

16

plaintiffs, this fact belies any inference that they were treated differently because of the extent of the repairs they made to their property, as opposed to some malign, unconstitutional motivation. *See id.* But an enforcement action cannot be brought "collectively" against seven different property owners. The relevant point is that the DEC would have to file seven individual enforcement actions against seven different property owners to rectify an environmental violation of the magnitude that plaintiffs are charged with committing. Thus, I cannot say that "the cases [are] fair congeners." *See T.S. Haulers, Inc.*, 190 F. Supp. 2d at 463 (quoting *Dartmouth Review*, 889 F.2d at 19).

Plaintiffs further argue that the Menorah Center's seawall is longer than plaintiffs' and that Manhattan Beach Park's seawall is almost as long as plaintiffs'. Pls.' Opp'n at 20–21, Dkt. #61 at 26–27. Defendants respond that only 340 feet of the Menorah's Center retaining wall, built on top of an existing seawall, were in violation of relevant regulations. Defs.' Reply Mem. of Law in Further Supp. of Their Mot. to Dismiss the Second Am. Compl. ("Defs.' Reply") at 16, Dkt. #63 at 22; *see also* Order on Consent, Albin Decl. Ex. K, at ¶ 9, Dkt. #60-11 at 3. Further, defendants argue that one of the exhibits attached to plaintiffs' Second Amended Complaint, an aerial photograph of plaintiffs' and their neighbors' properties, appears to show that plaintiffs' seawall is longer than the Park's. Defs.' Reply at 17, Dkt. #63 at 23; *see also* SAC Ex. H, Dkt. #47-8 at 2–3.

Regardless of the precise length of plaintiffs' seawall as compared with the Menorah Center's and the Park's, according to plaintiffs, these two comparators engaged in some, but not all, of the activities prohibited by the environmental regulations enforced against plaintiffs. SAC ¶¶ 59, 61. Specifically, plaintiffs do not allege that the Menorah Center was charged with (1) constructing fencing in a regulated area without a permit or (2) rebuilding its seawall at a

higher elevation and farther seaward than approved by the DEC's Hurricane Sandy general permits. *See id.* ¶ 59. Likewise, plaintiffs do not allege that the Park (1) placed fill in, on, and under its property without a permit or (2) rebuilt its seawall at a higher elevation and farther seaward than approved by the DEC's Hurricane Sandy general permits. *See id.* ¶ 61. I cannot say that property owners liable to a different extent than plaintiffs under the environmental regulations are similarly situated to plaintiffs in all material respects.[8] *See Witt v. Vill. of Mamaroneck*, 12-CV-8778, 2015 WL 1427206, at *6 (S.D.N.Y. Mar. 27, 2015) (finding that plaintiffs, who were issued a stop work order halting repairs to their home, failed to allege a suitable comparator for their selective enforcement claim where defendant had more legitimate reasons to issue an order against plaintiffs than their neighbors), *aff'd*, 639 F. App'x 44 (2d Cir. 2016).

In sum, plaintiffs have failed to provide the court with factual details that would allow the court to infer that their neighbors have violated the relevant laws and regulations to such an extent that the violations could fairly be compared with plaintiffs' alleged infractions. As another example, plaintiffs allege that each of the comparators "rebuilt his seawall at a higher elevation and farther seaward than approved by the DEC's Hurricane Sandy general permits, and used more undersized stones, concrete rubble debris, and unauthorized fill in its construction than [p]laintiffs allegedly used, in violation of [New York regulations]." SAC ¶¶ 45, 47, 49, 51, 53, 55, 57. But plaintiffs have not alleged any facts to support this conclusion, including how

---

[8]     Moreover, the fact that the Menorah Center and Manhattan Beach Park are not private residences detracts from their viability as adequate comparators because the DEC has discretion to consider such a factor when making enforcement decisions. *See, e.g.*, DEE-1: Civil Penalty Policy, N.Y. State Dep't of Envtl. Conservation, http://www.dec.ny.gov/regulations/25227.html (stating that the DEC has discretion to consider the public interest when deciding civil penalties). Thus, in the context of the DEC's decision as to whether and how to enforce the relevant regulations against various property owners, plaintiffs are not similarly situated to these comparators in all material respects.

high or close to the sea the rebuilt seawalls are, how high or close to the sea the general permits allowed the seawalls to be, or what kind of stones and fill are authorized. Absent such facts, plaintiffs have failed to allege that their neighbors committed anything more than technical violations of the relevant statutes. Thus, such facts are necessary to raise a reasonable inference that the comparators' alleged environmental abuses are fairly comparable to plaintiffs' when considered in the context of the DEC's enforcement decision.

In their brief, plaintiffs assert that their Second Amended Complaint "identified . . . the similar conduct in which each comparator engaged and the statutes and regulations that conduct violated," and "*in many cases* . . . provided factual details further explaining the nature and extent of the conduct." Pls.' Opp'n at 15, Dkt. #61 at 21 (emphasis added). But the only factual details in plaintiffs' allegations are the lengths of their neighbors' fences and the kinds of structures their neighbors have constructed after Hurricane Sandy. *See* SAC ¶¶ 44–62. Plaintiffs argue that any additional factual details are unnecessary because such details are not included in the DEC's Complaint. Pls.' Opp'n at 25, Dkt. #61 at 31. But the fact that they are not included in the DEC's Complaint does not mean that they are not necessary for the court to infer that the comparators listed in plaintiffs' complaint are liable under state environmental regulations *to the same extent* that plaintiffs allegedly are. Without additional factual details "explaining the nature and extent of the [comparators'] conduct," *see id.* at 15, Dkt. #61 at 21, the court cannot conclude that plaintiffs and their compactors are similarly situated in all material respects.

Plaintiffs seek to obfuscate the question before the court, arguing that "not one of the asserted distinctions [between plaintiffs and their comparators] renders implausible the inference . . . that [p]laintiffs were targeted" because Drescher "coveted their land for public access," *id.* at 19, Dkt. #61 at 25. Plaintiffs assert that, even if a jury could infer that the DEC

brought a formal enforcement proceeding against plaintiffs for some constitutionally permissible reason—like "the relative length of their seawall" or "the scope of their violations"—plaintiffs need not rule out all permissible motives in order to survive a motion to dismiss. *See id.* at 21, Dkt. #61 at 27. Instead, plaintiffs need to show only that an improper motive "can be inferred" from their factual allegations. *See id.* (emphasis omitted). To be clear, the court is not pointing to distinctions between plaintiffs and their comparators—or to the lack of details showing that there are no material distinctions—to fault plaintiffs for failing to rule out all permissible explanations for their alleged differential treatment. Indeed, that is not required by the law. *See Joglo Realties, Inc.*, 2016 WL 4491409, at *9. Rather, the distinctions show that plaintiffs have failed to plausibly allege that any other property owner is similarly situated to them in all material respects. This is fatal to their selective enforcement claim.

## B. Equal Protection—"Class of One"

### 1. Legal Standard

To state a claim under a "class of one" theory, plaintiffs must plead facts that support a plausible inference that they "ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). As stated above, plaintiffs bringing such a claim "must show an extremely high degree of similarity between themselves and [their comparators]." *Ruston,* 610 F.3d at 59 (quoting *Clubside, Inc.*, 468 F.3d at 159). Plaintiffs must show "that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 60

(quoting *Clubside, Inc.*, 468 F.3d at 159). In other words, plaintiffs and their comparators must be "*prima facie* identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

　　2. Analysis

　　Plaintiffs' "class of one" equal protection claim fails for the same reasons explained above. Because "class of one" claims require plaintiffs to meet a higher standard for showing that they are similarly situated to their comparators than selective enforcement claims do, and because plaintiffs have failed to meet the lesser standard required for selective enforcement claims, plaintiffs' "class of one" claim must likewise fail.[9] *See Witt*, 2015 WL 1427206, at *6 ("[T]he SAC fails to allege that any other homeowners were similarly situated in all material respects, let alone establish a high degree of similarity under the more stringent class of one standard.").

## C. Plaintiffs Are Not Granted Leave to Amend

　　The court need not grant plaintiffs leave to amend where amendment would be futile. *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014). Here, plaintiffs have assured the court that their Second Amended Complaint was their last and best. *See* Minute Entry, Dkt. #54 (Oct. 13, 2016). Plaintiffs have further acknowledged that they are unable to make additional factual allegations in support of their claims without conducting discovery. *See* Pls.' Opp'n at 26, Dkt. #61 at 32 (stating that plaintiffs cannot measure the increase in the elevation of

---

[9]　　Because plaintiffs have failed to state any viable constitutional claim, I do not address defendants' argument that Drescher is entitled to absolute immunity for all of his actions taken in his capacity as an agency prosecutor. Likewise, I do not address defendants' argument that the court should abstain from intervening in the administrative proceeding pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).

21

Comparator 2's property "without access to [the] property"); Pls.' Resp. to Defs.' Letter Requesting Pre-Motion Conference, Dkt. #52 at 2 (same). Nevertheless, as detailed above, plaintiffs have not alleged sufficient facts to render their equal protection claims plausible. Accordingly, granting leave to amend would be futile, and plaintiffs' claims are dismissed with prejudice. *See Case v. Clivilles*, --- F. Supp. 3d ---, No. 12-cv-8122, 2016 WL 6238608, at *9 (S.D.N.Y. Oct. 24, 2016) ("If plaintiff demonstrates that he cannot provide specific evidence to state a claim, the Court can dismiss the claim with prejudice.").

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted. Plaintiffs' complaint is dismissed in its entirety with prejudice.

SO ORDERED.

/s/ (ARR)

Allyne R. Ross
United States District Judge

Dated:        January 4, 2017
              Brooklyn, New York